UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTONIO ALVAREZ, et al.,

      Plaintiffs,

v.                          Case No.  8:07-cv-1319-T-33TGW

GENERAL WIRE SPRING COMPANY,

      Defendant.
_____/

## ORDER

This matter comes before the Court pursuant to defendant General Wire Spring Company's motion for summary judgment (Doc. # 32), filed on August 29, 2008, to which plaintiffs, Antonio Alvarez and Brenda Alvarez, responded on September 26, 2008 (Doc. # 47). For the reasons that follow, the Court grants in part and denies in part General Wire's motion.

## I.   Background

This case arises from injures sustained by Mr. Alvarez while using an Easy Rooter Junior to clear a clogged drainage pipe. The Alvarezes, in their complaint against Easy Rooter's manufacturer, General Wire, allege negligent design, negligent manufacturing, strict liability, and loss of consortium. (Doc. # 2.) By its motion, General Wire seeks summary judgment as to all counts of the Alvarezes' complaint. (Doc. # 32.)

**A.    The Easy Rooter**

The Easy Rooter is an electronic drain snake used for unclogging household drainage pipes.  The snake itself is held in a rotating caged-type drum.  (Dep. Michael Silverman Doc. # 33 at 41:11-19.)  The snake is fed from the drum and into the clogged pipe through a spout, or distributor tube, which protrudes from the entrance of the drum.  (<u>Id.</u> at 22:15-20.) On the distributor tube is a thumb set screw, the product design at issue in this case.  (<u>Id.</u>)  By tightening the thumb set screw, the operator of the Easy Rooter can prevent the snake from both entering and leaving the cage.  (Dep. Michael Kaufmann Doc. # 34 at 31:1-25, 32:1-25.)  When the Easy Rooter is turned on, the drum rotates causing the snake to rotate and function as a flexible drill that clears debris from household drainage pipes.  (Dep. Michael Silverman Doc. # 33 at 41:11-19.)

**B.    The Easy Rooter's Operating Manual**

The operating manual explains how the Easy Rooter should be operated:

> Pull the cable out of the cage and put it into the drain until it will not go any farther. Then pull another foot of cable out of the cage so that an arc is formed between the machine and drain. Tighten the thumb screw on the front of the cage firmly against the cable. Put the motor switch in the **Forward** position. Then, with both gloved hands

on the cable, step on the foot pedal. Guide the
cable into the line with a firm, even pressure.

(Doc. # 32-2 at 5-6.)   After the drain is unclogged, the operator is instructed to "return the cable to the cage with the motor turning **Forward**." (<u>Id.</u> at 6.)   Under the heading "CAUTION," the manual states, "Do not use reverse to pull the cable out of the drain.   Always run the machine in **Forward**, whether you are feeding the cable into the line or pulling it out." (<u>Id.</u>)

The manual additionally contains specific safety instructions under the heading "Specific Safety Information." (<u>Id.</u> at 4-5.)   First, the manual warns against operating the machine in reverse, **"Do not operate machine in reverse (REV).** Operating machine in reverse can result in cable damage and is used only to back cutting tool out of an obstruction." (<u>Id.</u> at 5.)   Second, the specific safety instructions explain that the Easy Rooter should be positioned "within two feet of the drain opening" because "greater distances can result in cable twisting or kinking." (<u>Id.</u>)   Finally, the specific instructions admonish the user to "keep hands away from the rotating drum and distributor tube" because a "hand may be caught in the moving parts resulting in serious injury." (<u>Id.</u>)

Finally, the Easy Rooter contains a number of "On-Product" warning labels, which are affixed to the Easy Rooter. One label reads, "Warning! Do not operate this machine without reviewing manufacturers' instructions." (Doc. # 32-3 at 2.) The other label contains thirteen warnings, none of which address keeping the machine on forward, positioning the machine two feet from the drain opening, and the potential danger from the rotating drum and distributor tube. (Doc. # 32-4 at 2.)

### C. Mr. Alvarez's Injuries

The undisputed facts demonstrate that Mr. Alvarez read neither the operator's manual nor any of the "On-Product" warning labels on the Easy Rooter. (Dep. Antonio Alvarez Doc. # 36 at 133:17-134:4.) When Mr. Alvarez rented the Easy Rooter, he was not given the instruction manual. (Id. at 35:8-21.) Accordingly, some of his actions did not conform with the instructions for using the Easy Rooter. Mr. Alvarez "set the machine up approximately two to three feet" from the drainage opening. (Id. at 49:6-17.) In addition, after unclogging the drainage pipe, Mr. Alvarez placed the machine in reverse while feeding the snake back into the drum. (Id. at 64:7-23.) It is while feeding the snake back into the drum that Mr. Alvarez sustained his injuries.

While feeding the snake into the drum, Mr. Alvarez alleges his glove was snagged in the thumb set screw. Mr. Alvarez's expert witness explains, "[Mr. Alvarez] was operating the snake, [and] pulling the snake out of the wall . . . . He's wearing the leather gloves as prescribed and sold by Home Depot. His left-hand glove got too close to the hub, and . . . the thumb screw caught his glove" and "pulled his hand down and around the rotating cage." (Dep. Michael Kaufmann Doc. # 34 at 53:23-54:5.)

### D.  Complaint

On June 18, 2007, the Alvarezes filed an eight count complaint against Home Depot U.S.A., Inc. and General Wire in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida. (Doc. # 2.) Home Depot U.S.A. removed the case to this Court on July 26, 2007, on the basis of diversity of citizenship pursuant to §§ 28 U.S.C. 1332, 1441. (Doc. # 1.) On August 18, 2008, the parties participated in a mediation conference, which resulted in a settlement between the Alvarezes and Home Depot, U.S.A. (Doc. # 37.) On September 4, 2008, Home Depot U.S.A., Inc. was dismissed from this action. (Doc. # 38.) This action remains pending as to General Wire, and the Alvarezes' complaint contains four counts against General Wire (counts III, IV, V,

and VII).

In count III of their complaint, the Alvarezes assert that General Wire was "negligent and thereby caused certain defects in the design, manufacture, sale, distribution, assembly, and creation" of the Easy Rooter. (Doc. # 2 at ¶ 51.) Count III additionally alleges that General Wire negligently failed to warn the Alvarezes of the Easy Rooter's snag potential. (<u>Id.</u>)

Count IV of the complaint alleges that General Wire breached its duty to "perform reasonable inspections, clinical trials, performance standard development, testing procedures, research and human factors testing and research to discover and eliminate defects in the Drain Cleaner." (<u>Id.</u> at ¶ 64.) Count IV also attempts to place liability on General Wire for "[f]ailing to warn users of the Drain Cleaner of the hazards posed in using the Drain Cleaner." (<u>Id.</u> at ¶ 75.)

In count V, the Alvarezes sue General Wire for Mrs. Alvarez's loss of consortium. (<u>Id.</u> at ¶¶ 80-105.) Within this count, the Alvarezes reiterate their contentions regarding General Wire's alleged negligence and failure "to warn uses of the Drain Cleaner of the hazards posed in using the Drain Cleaner." (<u>Id.</u> at ¶ 100).

Finally, in count VII, the Alvarezes assert that General

Wire should be held strictly liable for the Easy Rooter's allegedly defective condition. (_Id._ at ¶¶ 126-44.) Specifically, the Alvarezes assert, "[A]t the time that Plaintiff, Antonio Alvarez, rented the Drain Cleaner from Home Depot, it contained a defect that rendered it unsafe for its intended use, including but not limited to, a thumb set screw in the collar at the exit end of the rotating cage to secure the wire cable, creating a snag point." (_Id._ at ¶ 140.)

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. _Mize v. Jefferson City Bd. of Educ._, 93 F.3d 739, 742 (11th Cir. 1996) (citing _Hairston v. Gainesville Sun Publ'g_

7

Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary

judgment.  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).  However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. Analysis

By its motion, General Wire argues for summary judgment on all counts of the Alvarezes' complaint.  First, General Wire challenges the Alvarezes' expert, Michael Kaufmann, P.E., under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). (Doc. # 32 at 14-16.)  Specifically, General Wire contends that "[b]ecause the foundation of plaintiffs' proffered 'expert' opinion is woefully deficient, plaintiffs cannot satisfy their burden of proof with respect [to] either their 'negligence' or 'strict products liability' claims." (Doc. # 32 at 14.)

Second, General Wire seeks summary judgment in its favor as to count III (negligent design) and count IV (negligent manufacturing) arguing that (1) the Alvarezes failed to proffer any evidence of General Wire's negligence; (2) that

Mr. Alvarez was comparatively negligent; and (3) that Mr. Alvarez failed to read General Wire's warnings and instructions for the Easy Rooter. (Id. at 16-18.)

Third, General Wire requests summary judgment as to count VII (strict liability) citing Mr. Alvarez's misuse of the Easy Rooter. (Id. at 18-19.) Specifically, General Wire contends that "it is abundantly clear that Mr. Alvarez 'misused' the Easy Rooter. Mr. Alvarez admitted that, while retracting the cable back into the machine's cage, he ran the machine in 'Reverse' *the entire time*." (Id. at 19.)

## A. General Wire's Daubert Challenge

To establish their claims for negligent design, negligent manufacturing, and strict liability, the Alvarezes must demonstrate that the Easy Rooter was defective. Marzullo v. Crosman Corp., 289 F. Supp. 2d 1337, 1346 (M.D. Fla. 2003) (explaining that to prove strict liability for defective design, "a plaintiff must show . . . that the product has a defect); Broderick v. Danek Medical, Inc., No. 95-8644-CIV-RYSKAMP, 1999 WL 1062135, *3 (S.D. Fla. Apr. 9, 1999) (explaining that proof of negligent design and negligent manufacturing requires "evidence of the existence of [a] defect in the product"). "Design defects must be proven by expert testimony." Drury v. Cardiac Pacemakers, Inc., No.

10

8:02-cv-933-T-17MAP, 2003 WL 23319650, *4 (M.D. Fla. June 3, 2003).

In this case, the Alvarezes rely on the expert testimony of Kaufmann to establish the Easy Rooter's defective design. In his report, Kaufmann opines that the thumb set screw, which protrudes from the drum, is a snag hazard. (Doc. # 32-5 at 5.) Additionally, Kaufmann opines that the Easy Rooter's protruding thumb set screw is not in compliance with the American National Standard for Machine Tools, ANSI B15.1, the applicable industry standard for rotating mechanical machinery. (Id.)

During his deposition, when asked for his opinion on causation, Kaufmann testified that Mr. Alvarez's incorrect use of the machine did not contribute to Mr. Alvarez's injuries. (Dep. Michael Kaufmann Doc. # 34 at 69:19-24.)

General Wire challenges Kaufmann's testimony under Daubert, 509 U.S. at 579, arguing that the testimony is "inherently unreliable, and provides no assistance in understanding the evidence or determining a fact in issue." (Doc. # 32 at 15.) In support of its argument, General Wire cites Kaufmann's failure to: 1) consider the operating and safety information; 2) consider Mr. Alvarez's sworn testimony; and 3) review the Easy Rooter's instructional video. (Id.)

11

Essentially, General Wire argues that, because Kaufmann's testimony is likely inadmissible, the Alvarezes cannot sustain their burden to overcome General Wire's motion for summary judgment.

The Alvarezes, on the other hand, contend that Kaufmann's testimony on the Easy Rooter's design defect meets <u>Daubert</u>'s reliability requirements because the testimony is based on Kaufmann's own experience, his observation of the machine, and his review of the American National Standard for Machine Tools. (Doc. # 47 at 4.) Furthermore, the Alvarezes submit that consideration of the operating manual and Mr. Alvarez's testimony regarding how he used the machine is irrelevant. (<u>Id.</u> at 7-8.) The Alvarezes explain, "Kaufmann's testimony is that the way in which Mr. Alvarez was using the machine has no bearing on his opinion that the exposed thumbscrew constitutes a snag hazard." (<u>Id.</u> at 8.)

With respect to <u>Daubert</u>'s requirement that the testimony assist the trier of fact, the Alvarezes contend that all of Mr. Kaufmann's opinions, including the opinion that the thumb set screw is a snag hazard, provide sufficient evidence for a jury to conclude that the Easy Rooter was defective. (<u>Id.</u> at 6.) The Court agrees with the Alvarezes.

The admissibility of expert testimony is governed by Fed.

12

R. Evid. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702 is a codification of _Daubert_, 509 U.S. at 579. In _Daubert_, the Court determined that the district court serves as a gatekeeper in determining the admissibility of expert testimony, and directed the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." _Id._ at 589. In _Kuhmo Tire Co._, the Court extended its reasoning in _Daubert_ to non-scientist experts, applying it also to testimony on technical and other specialized knowledge. 526 U.S. 137, 141 (1999).

In addition, the trial judge is afforded broad discretion in deciding _Daubert_ issues. As stated in _Kumho Tire Co._, the trial judge has the discretion "both to avoid unnecessary reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less

usual or more complex cases where cause for questioning the expert's reliability arises." <u>Kuhmo Tire Co.</u>, 526 U.S. at 152.

In <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit instructed:

> To fulfill their obligation under <u>Daubert</u>, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Rink</u>, 400 F.3d at 1291-92 (citing <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548, 562 (11th Cir. 1998)). The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. <u>Rink</u>, 400 F.3d at 1292; <u>see also</u>, <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999) ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence.").

The Alvarezes have met their three-pronged burden under Rule 702 and applicable precedent. First, Kaufmann is an

experienced engineer, and General Wire has not challenged
Kaufmann's qualifications.[1]   There is no dispute as to
Kaufmann's qualifications, and thus, Kaufmann survives the
first inquiry under Rule 702.

Second, this Court finds that the methodology by which
Kaufmann reaches his conclusions is sufficiently reliable.
Kaufmann relied on his own experience, his observation of the
machine, and his review of the American National Standard for
Machine Tools.   While General Wire contends that Kaufmann
should have considered additional factors, such as Mr.
Alvarez's conduct and the Easy Rooter's operating manual, this
argument goes to the weight that should be given to the
evidence and not the sufficiency of the evidence under Rule
702.   Thus, Kaufmann survives the second inquiry under Rule
702.

Third, this Court finds that Kaufmann's testimony will
assist the trier of fact in determining a fact in issue.
Whether the Easy Rooter's thumb set screw constituted a design
defect is a fact question.   Thus, Kaufmann's testimony that

---

[1] Kaufmann has designed rolling machines and metal
rolling machines. (Dep. Michael Kaufmann Doc. # 34 at 45:16-
18.)   His article, "Forensic Safety Aspects of Machine
Guarding and Machine Design" is published in Codes and
Standards in Forensics. (Id. at 52:19-53:16.)

the thumb set screw was a snag hazard that did not comply with the American National Standard for Machine Tools would indeed assist the trier of fact in determining whether the Easy Rooter's thumb set screw constituted a defective design. Thus, Kaufmann survives the third and final inquiry under Rule 702.

Furthermore, as the Eleventh Circuit has explained, "A district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (internal citations omitted) (internal quotations omitted). General Wire may accordingly cross-examine Kaufmann and challenge the basis of his opinion before a jury. The Court therefore finds that Kaufmann's testimony is admissible.

### B. Counts III and IV

General Wire argues that it is entitled to summary judgment as to the Alvarezes' negligent design and negligent manufacturing claims because Mr. Alvarez misused the Easy Rooter and because Mr. Alvarez did not read the warnings or instructions for the Easy Rooter. (Doc. # 32 at 16.)

### 1. Misuse of the Easy Rooter

General Wire contends that Mr. Alvarez's misuse of the Easy Rooter combined with the Alvarezes' inability to establish negligence on the part of General Wire makes summary judgment appropriate. (Id.) The Alvarezes' contend that whether Mr. Alvarez's misuse contributed to his injuries is an issue of fact that must be decided by the jury. (Doc. # 47 at 8-9.) The Court agrees with the Alvarezes.

The Florida Supreme Court has explained, "product misuse is not an absolute bar to a products liability claim sounding in negligence. Rather, . . . product misuse merges into the defense of comparative negligence [and] reduces a plaintiff's recovery in proportion to his or her own comparative fault." Standard Havens Prods., Inc. v. Benitez, 648 So. 2d 1192, 1194 (Fla. 1994). In this case, there are genuine issues of fact concerning whether Mr. Alvarez's misuse of the Easy Rooter contributed to the Alvarezes' injuries, and if so, the extent to which General Wire's liability, if any, would be reduced due to Mr. Alvarez's own negligence.

It is undisputed that Mr. Alvarez placed the Easy Rooter in reverse while retracting the snake from the drain and that Mr. Alvarez positioned the Easy Rooter "as far as three feet" from the drain opening -- both actions in direct conflict with

General Wire's instructions for the Easy Rooter. (Doc. # 47 at 2.) Although this may support a finding that Mr. Alvarez's misuse was the sole cause of his injuries, there is also evidence on the record supporting the opposite conclusion. The Alvarezes have proffered the expert testimony of Kaufmann, an experienced engineer, who testified that Mr. Alvarez's misuse of the Easy Rooter did not contribute at all to Mr. Alvarez's injuries. (Dep. Michael Kaufmann Doc. # 34 at 69:19-25.) This conflict is a genuine issue of material fact that the jury must evaluate.

In addition, Kaufmann's report explains that the thumb set screw creates a snag hazard and that the thumb set screw does not comply with the American National Standard for Machine Tools. (Doc. # 32-5 at 5.) Given the conflicting evidence, a jury, not the Court should weigh the evidence and make a determination.

General Wire's reliance on <u>Veliz v. Rental Service Corp. USA, Inc.</u>, 313 F. Supp. 2d 1317 (M.D. Fla. 2003), is misplaced. In <u>Veliz</u>, a laborer used a forklift as a personnel carrier. <u>Id.</u> at 1321. The forklift tipped over while carrying the laborer, killing the laborer. <u>Id.</u> The estate of the laborer sued the manufacturer of the forklift for negligent design and negligent manufacturing. <u>Id.</u> The court

granted summary judgment on the estate's negligence claims because the undisputed evidence demonstrated that but for the laborer using the forklift as a personnel lift, he would not have been killed.  Id. at 1328.

Veliz is distinguishable because, unlike Veliz, there is conflicting evidence regarding whether Mr. Alvarez's misuse of the Easy Rooter was the sole cause of his injuries.  General Wire's argument to the contrary is premised, in part, on the assumption that Kaufmann's testimony on design defect and causation is inadmissible.  Because it is admissible, the Alvarezes have met their burden of establishing a genuine issue of material fact.  Accordingly, summary judgment is not appropriate and the jury must determine whether Mr. Alvarez's misuse of the Easy Rooter contributed to his injuries, and if so, the extent to which this misuse decreases General Wire's liability, if any.

### 2.   Failure to Read Warning and Instructions

The Alvarezes' complaint does not contain a specific "failure to warn" count; however, Counts III, IV, and V allude to General Wire's allegedly deficient warnings to Mr. Alvarez concerning the Easy Rooter.  General Wire seeks a summary judgment as to all "failure to warn" claims based upon the uncontested fact that Mr. Alvarez did not read any of the

warnings for the Easy Rooter or the instruction manual for the Easy Rooter. (Doc. # 32 at 17.)

With respect to the failure to warn allegations, the Alvarezes contend that a jury, rather than this Court, should decide whether an instruction regarding the use of reverse should have been an "On-Product" warning. (Doc. # 47 at 14.) The Alvarezes explain:

> It is foreseeable that one would see buttons for forward and reverse and assume that the reverse button would be for retracting the cable back into the electric sewer snake. . . . A jury could certainly find that failure to identify this very specific risk, which would be contrary to the common sense of most users, is negligent and constitutes a failure to warn, regardless of any general warnings on the machine itself that it is dangerous.

(<u>Id.</u> at 14-15.)

Under Florida law, "Strict liability and negligent failure to warn cases boil down to three elements that Plaintiff must prove: 1) that the warnings accompanying the item were inadequate; 2) that the inadequacy of the warnings proximately caused Plaintiff's injury; and 3) that Plaintiff in fact suffered injury by using the product." <u>Colville v. Pharmacia & Upjohn Co., LLC</u>, 565 F. Supp. 2d 1314, 1321 (N.D. Fla. 2008). In this case, the Alvarezes focus their arguments on the first, element -- the alleged inadequacy of the

warning.

The Alvarezes contend that a specific warning about the "reverse" button should have been placed on the product. Case law supports the Alvarezes' contentions regarding the adequacy of the warning: "A warning may be defective not only by virtue of inadequate wording, but as a result of its location and the manner in which the warning is conveyed." <u>Brown v. Glade & Grove Supply, Inc.</u>, 647 So. 2d 1033, 1035 (Fla. 4th DCA 1994); <u>see also</u>, <u>Stanley Indus., Inc. v. W.M. Barr & Co., Inc.</u>, 784 F. Supp. 1570, 1575 (S.D. Fla. 1992) ("[A] warning is adequate if it is communicated by means of positioning, lettering, coloring, and language that will convey to the typical user of average intelligence the information necessary to permit the user to avoid the risk and to use the product safely.")

However, the Alvarezes' failure to warn claims fail as a matter of law. Because Mr. Alvarez did not read the warnings, the Alvarezes cannot show that the failure to warn was the proximate cause of Mr. Alvarez's injuries. This principal was articulated in <u>Lopez v. S. Coatings, Inc.</u>, 580 So.2d 864 (Fla. 3d DCA 1991). In <u>Lopez</u>, an office worker sued the manufacturer of paint products after she suffered from an asthma attack caused by inhaling paint fumes. <u>Id.</u> at 865. The painters did not read the paint manufacturer's warnings

regarding fumes, and the court determined that the office worker's failure to warn claims where therefore barred: "Where the person to whom the manufacturer owed a duty to warn . . . has not read the label, an inadequate warning cannot be the proximate cause of the plaintiff's injuries." Id.

This principal was also applied to bar failure to warn claims in Pinchinat v. Graco Children's Products, Inc., a case in which an infant was strangled by a component of a stroller when the mother of the infant left the infant unattended in the stroller during a party. 390 F. Supp. 2d 1141 (M.D. Fla. 2005). The manufacturer of the stroller included an instruction manual warning that infants should not be left unattended in the stroller and that reclining infants could slide out of the stroller and be strangled under certain conditions. Id. at 1147. In addition to being in an instruction manual, the warning was also placed on the stroller itself. Id. The mother admitted that she was able to read the warnings, but that she did not read them carefully and did not follow them. Id. The court found that the warnings were adequate. Id. However, the Court also determined that, "even if . . . the warnings were inadequate and that there is a material factual dispute as to their adequacy which precluded summary judgment, plaintiff could

still not prevail.  Under Florida law, plaintiff's failure to read the warning label extinguishes proximate cause in a failure to warn claim." Id. at 1148.

The same logic applies to bar Mr. Alvarez's failure to warn claims.  The following exchange during Mr. Alvarez's deposition demonstrates that Mr. Alvarez did not read the instructions or any warnings:

> Q:  So at the time, you hadn't read anything that was on there?
> A:  No.  Because I – I believe all the information that was on there was the nomenclature about the motor and just switch positions.
> Q:  Okay.  So it didn't seem important to you to read everything that was on there?
> A:  It seemed -- like I said, common sense would -- where the instructions and the directions on the switch.
> . . . .
> Q:  All right.  Can you read for me what the warning says?
> A:  It says, warning, do not operate this machine without reviewing manufacturer's instructions.
> Q:  Okay.  Is it fair to say that by the time you had gotten this machine to Rebecca's house and gotten it set up, you had not made any calls or additional requests to see the manufacturer's instructions or anything like that?
> A:  No, I hadn't.
> Q:  And by the time you ultimately got it set up [to] use it you hadn't asked anybody for any manufacturer's instructions?
> A:  No, I hadn't.
> Q:  Okay.  You hadn't called any plumber friends or anything like that about how to use this machine?
> A:  No.
> Q:  You were going to figure it out?

23

```
A:    Well, if you look at the machine, I mean, you
      have an off and on switch and a reverse
      switch, common sense tells you this is what
      you have to do.  I wasn't offered any advice,
      any instructions.
Q:    So you were going to figure it out?
A:    Right.
```

(Dep. Antonio Alvarez Doc. # 36 at 45:11-25, 47:14-25, 48:1-11.)

In this case, Mr. Alvarez chose not read the warning. Regardless of whether the warning was adequate or inadequate, Mr. Alvarez is barred from pursuing damages under a failure to warn theory because he cannot establish proximate cause.  His admission that he did not read the warning renders arguments about the adequacy of the warning a nullity.  See <u>Ashby Div. of Consol. Aluminum Corp. v. Dobkin</u>, 458 So. 2d 335, 337 (Fla. 3d DCA 1984) ("Although plaintiff insists that the jury could have determined that defendants were negligent in failing to warn or instruct, the undisputed evidence shows that plaintiff did not read the instructions on the ladder and therefore any failure to warn could not, as a matter of law, be the proximate cause of plaintiff's injuries").

Because the undisputed facts demonstrate that Mr. Alvarez failed to read the warning, General Wire's alleged failure to warn did not proximately cause the Alvarezes' injuries. Accordingly, General Wire is entitled to summary judgment with

respect to any claims predicated upon General Wire's failure to warn Mr. Alvarez of dangers associated with the Easy Rooter.

## C.    Count VII

General Wire finally argues that Mr. Alvarez's misuse of the Easy Rooter bars recovery under the theory of strict liability. (Doc. # 32 at 18.)  "Under Florida law, a strict product liability action requires the plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was defective or created an unreasonably dangerous condition (4) that proximately caused (5) injury." McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).  "A manufacturer is not strictly liable for all injuries caused by its product, but is liable only when the product is used as intended." Pinchinat, 390 F. Supp. 2d at 1148 (citing High v. Westinghouse Elec. Corp., 610 So. 2d 1259, 1262 (Fla. 1992)).

In support of its contention that Mr. Alvarez misused the Easy Rooter, General Wire directs the Court to the fact that Mr. Alvarez retracted the snake from the drain while the machine was in reverse. (Doc. # 32 at 19.)  The Alvarezes contend, on the other hand, they were using the Easy Rooter for the purpose for which it was intended, cleaning out a clogged drain. (Doc. # 47 at 14.)  Although it is undisputed

that Mr. Alvarez did not follow the directions in operating the machine, a question of fact nonetheless remains as to whether he was using the Easy Rooter for its intended purpose. Accordingly, General Wire is not entitled to summary judgment on this ground.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

General Wire's motion for summary judgment (Doc. # 32) is **GRANTED IN PART AND DENIED IN PART**. General Wire is entitled to summary judgment as to the Alvarezes' claims predicated upon General Wire's failure to warn Mr. Alvarez of the dangers associated with the Easy Rooter. General Wire's motion for summary judgment is otherwise denied.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>1st</u> day of February 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record